# 𝔅𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

## BELVIN v. CITY OF RICHMOND.

### December 13th, 1888.

1. ADMINISTRATION OF JUSTICE—*Power of court.*—Where the court, in its discretion, deems it essential to the proper administration of justice to close streets so as to prevent noises which disturb judge and jury in hearing witnesses and counsel, it has power to do so.
2. IDEM—*Hustings court of Richmond.*—The judge of the said court is a judge of the State, and the city has no authority to control his action.

Error to judgment of hustings court of city of Richmond, rendered December 1st, 1887, in an action of trespass on the case wherein Charles E. Belvin was plaintiff, and the city of Richmond was defendant. The court having given an instruction to the jury, they brought in their verdict for the defendant, and the court rendered judgment accordingly. To which ruling the plaintiff excepted, and brought the case here upon a writ of error. Opinion states the case.

*H. A. Atkinson, Jr., Jos. Christian,* and *Saml. D. Davies,* for plaintiff in error.

*C. V. Meredith,* for defendant in error.

LACY, J., delivered the opinion of the court.

The case is as follows: Judge Atkins, the judge of the hustings court of the city of Richmond, who was holding his court in the building used for that purpose, found himself and his

court so annoyed by the noise of passing vehicles along Capitol street, on which the said building was located, that he caused ropes to be stretched across this street during the hours when his court was sitting, each day of sitting. The ropes were such as are commonly used to obstruct streets when for any cause travel is to be suspended on a street—orders obtained from the city engineer for the purpose. These ropes were an inconvenience to the traveling public, who were thus compelled to go around one square when going that way, so the city authorities protested, through the mayor, against the use of the ropes, but nevertheless they were maintained by the court, and had been in use two years when, on the 21st day of February, 1887, the plaintiff's wife was driving along Capitol street in a top-buggy, drawn by one horse, about four or five o'clock in the afternoon of that day. The janitor was in the act of taking down one rope, the first reached by the buggy. When the plaintiff's wife came up, the janitor said to her he would let her pass in a moment, and then took the rope down. As she passed he told his little son to run on, up to the other rope, and unfasten that. The buggy reached this last rope before the boy could take it down, and it being in full view, so that it was seen by a witness who was sixty yards off. The plaintiff's wife, being unable to pass the rope in the middle of the street, where it hung lower than at the ends, drew the horse to one side, and drove to the gutter, close to the sidewalk, where the rope was hung higher up, and attempted to drive under it, but the horse's head struck the rope and he stopped, but, being urged forward, he went under, and the buggy top was caught by the rope, the buggy upset, and the plaintiff's wife thrown out and injured, so as to require the attention of a doctor. This action was brought thereupon against the city for damages on account of the injury received by the plaintiff's wife. At the trial, the judge instructed the jury as follows: " The court instructs the jury that if they believe from the evidence that the rope complained of in the declaration was put there by order of the judge of the

hustings court for the purposes set forth in his subsequent written order of July 7, 1887, then they must find for the city of Richmond," and refused all other instructions, and the plaintiff excepted, and, there being a verdict for the defendant, and a motion to set aside the same overruled, the plaintiff applied for a writ of error to this court, which was awarded.

We are of opinion that the instruction given by the circuit court, and excepted to by the plaintiff, is plainly right. The judge of the hustings court of the city of Richmond is the judge of a State court of equal dignity with the circuit courts of the State. In the administration of justice in that court, the said judge is charged with the preservation of order in his court, and to see to it that the due administration of justice is not obstructed by any person or persons whatsoever, and to this end he may rightfully summon to his aid, if necessary, the whole power of the Commonwealth. He had certified that the passing of vehicles to and fro on Capitol street in front of the court-room of his court, during the sitting of his court, obstructed the proper administration of justice therein. If this was so (and that such was the case is not denied, and is no doubt perfectly true), then either the court-room should have been removed or the travel of these vehicles stopped during the sitting of this court, which latter involved no great hardship, it requiring only a short drive to pass around on the other side of the square. But, however this may be, it is perfectly clear that the city had no agency in the matter. The city, through its highest officer, had entered its protest against the obstruction; but the judge, regarding the due administration of justice of more importance than the use of a carriage-way of a few yards during a portion of each day, refused to remove the ropes. The city could do no more, unless it had instituted legal proceedings about the matter. The city was certainly powerless to remove the ropes, being, like all other persons, bound by the orders of the court until reversed by some competent tribunal. The ropes being only used in daylight, and being of size sufficient, with

white flags attached to the middle, were such obvious obstruc-
tions as not to suggest danger to any but the blind, and the
matter of convenience appears to be small in comparison with
the rights involved in the due administration of justice in such
a court as this.   It would be a farce to enter upon the trial of
the rights of a citizen, either of person or of property, and to
take the evidence before the triers of the fact under such circum-
stances that the final arbiters could not hear what the evidence
was.   Such would be a mock trial and a moot court.   No judge
should be expected to hold a court under such circumstances.
It is said that it is the duty of the city to provide a suitable
court-house.   That may be admitted, and there is no reason to
believe that the city of Richmond will not so provide such a
suitable place as soon as it may be done.

   This disposes of the case; but, if that question arose, it ap-
pears that the accident (which is much to be regretted, as it hurt
a lady and a little child) resulted not from the fault of the city
or the hustings court judge, but the imprudence or incaution of
the lady, who, in trying to pass under this rope, doubtless forgot
that the buggy-top was up, and was higher than her head,
which safely passed under the rope, which struck the buggy-top
without striking her.   The judgment of the circuit court of
Richmond is plainly right, and must be affirmed.

   FAUNTLEROY, J., and HINTON, J., concurred in the result.

   RICHARDSON, J., concurred in the opinion.

   LEWIS, P., concurring, said:

   The order was necessary to secure the quiet essential to the
proper administration of public justice.   Judge Atkins, without
consulting anybody, had the authority to put the rope up, and
the city was not responsible therefor.   Indeed, had the mayor or
police gone there to take down the rope, the judge would have

been justified in putting them in jail, and no doubt would have done so.    It is for a judge to exercise a reasonable discretion in cases such as this, and no general rule can be laid down; but this court would not countenance any needless or wanton exercise of this power on the part of a judge.    For a court of justice not to be able to secure the quiet necessary to allow judge and jury to hear the witnesses and counsel, would make the proceedings in that court a farce.    He concurred in the instruction of the circuit judge, who said to the jury if they believed the rope was put up by the order of the hustings court, that ended the case.

JUDGMENT AFFIRMED.