# Wytheville

## JULIA C. BOUSH v. CITY OF NORFOLK.

June 14, 1923.

1. STREETS AND HIGHWAYS—*Obstruction on Sidewalk—Notice to City of Obstruction—Case at Bar.*—In the instant case, an action against a city for injuries caused by plaintiff striking her foot against a meter box projecting above the level of the sidewalk, defendant claimed that there was no evidence tending to show that the city had actual or constructive notice of the existence of the obstruction.

   *Held:* That the testimony of the sergeant of police, whose duty it was to examine and report the condition of the sidewalk in question, that he knew of its bad condition and that he had reported obstructions on it as being dangerous, accompanied by the fact that the meter box in question had been located in the sidewalk for nearly two years, and was in the same condition as several other meter boxes on the same sidewalk, furnished ample evidence to warrant the jury in finding that the defendant had or ought to have had such notice.

2. STREETS AND HIGHWAYS—*Obstruction on Sidewalk—Obstruction Placed on Sidewalk by United States Government.*—In the instant case, an action against a city for injuries caused by plaintiff striking her foot against a meter box projecting above the level of the sidewalk, defendant claimed that the evidence showed that the obstruction was placed in the street by the United States Government and that the city was not liable for an injury resulting from the act of the Government, over which it had no control. It did not appear that the Government had or exercised any authority whatever over the meter box, or the sidewalk, for over two years before the accident, and it did appear that the city had sole control over and was charged with the sole duty of keeping such sidewalk in a reasonably safe condition for over two years before and at the time of the accident.

   *Held:* That under this evidence the city was not excused for its negligent failure in keeping the sidewalk reasonably safe.

3. DAMAGES—*Personal Injuries—Excessive Damages—Injuries from a Fall.*—In the instant case, an action against a city for injuries arising out of a defective sidewalk, plaintiff was a married woman with a husband and three children and kept no servants. Plaintiff testified that she was confined in bed for six weeks and that since the accident had been incapable of any sustained work; that before the accident she

earned $2.75 a day, and since the accident had earned nothing. The physician who attended plaintiff testified that in his opinion her injuries were not permanent. He did not testify that she had recovered at the time of the trial and did not know whether she had suffered any nervous shock.

*Held:* That the evidence was sufficient to warrant the jury in assessing plaintiff's damages at $1,000.

Error to a judgment of the Circuit Court of the city of Norfolk, in a proceeding by motion for a judgment for damages. Judgment for defendant. Plaintiff assigns error.

*Reversed and final judgment.*

This is an action by notice of motion, brought by the plaintiff in error (who will be hereinafter called plaintiff) against the defendant in error (which will be hereinafter called the defendant city), seeking to recover damages for certain personal injuries sustained by the plaintiff caused by striking her foot against a meter box which projected above the level of the sidewalk along which the plaintiff was walking at the time, which was at night, it being alleged that the defendant city was guilty of actionable negligence in allowing the meter box to remain in that condition, especially in view of the alleged poorly lighted condition of the sidewalk in that locality.

There was a trial by jury which resulted in a verdict in favor of the plaintiff for the sum of $1,000, which, on motion of the defendant city, was set aside by the trial court and a new trial granted. Upon the new trial, neither party demanding a jury, and no evidence being introduced either for the plaintiff or defendant, the court entered a final order dismissing the action, and the plaintiff brings error.

The only grounds urged in argument for the defendant city as sustaining the action of the trial court setting aside the verdict are as follows:

"First.    That there was no evidence in the record
showing or tending to show that the city of Norfolk
had either actual or constructive notice of the existence
of the obstruction which is alleged to have caused plain-
tiff's injury.

"Second.    That the evidence showed that the alleged
obstruction was placed in the street by the United
States Government, acting in its governmental capa-
city, a short time before the happening of the plaintiff's
accident, and that the city of Norfolk was not liable
for an injury resulting from the act of a government
over which it had no control.    And,

"Third.    That the damages of $1,000 allowed by the
verdict were excessive."

The material evidence and facts, as the latter must
be taken as established in view of the verdict of the
jury, are as follows:

The United States Government, during the World
War, prior to January 1, 1919, installed the meter box
in question.    The evidence is silent as to whether the
meter box, as it was installed, was above or on a level
with the sidewalk.    The United States Government,
however, certainly did not operate the water system, in
connection with which the meter box was installed,
after January 1, 1919, if it did so up to that time; and
after that date did not own or operate such meter box,
or water system, or have any connection with such
operation, or with the duty of maintenance of the side-
walk in which the meter box was located.    On and
after January 1, 1919, the city of Portsmouth owned
such water system, but had nothing to do with the
maintenance of the sidewalk.    The defendant city, cer-
tainly on and after January 1, 1919, and up to the time
of the accident in suit (which occurred on January 30,
1921), a period of nearly two years, had resting upon

it the sole duty of keeping said sidewalk in reasonable condition with respect to the projection of obstructions therein, such as said meter box, above the level thereof.

The sidewalk had not been paved at the time of the accident. The particular meter box in question, and several others on the same block, were in practically the same condition of projection above the level of the sidewalk at the time of the accident. The sergeant of police of the defendant city, a witness for the latter, whose duty it was to examine and report the condition of the sidewalk on this block from time to time, on cross-examination testified in substance, that the obstructions on the sidewalk of this block, caused by the projection of the meter boxes above the level of the sidewalk, had rendered the sidewalk dangerous to pedestrians for a long while before the accident; that this was due to the fact that "the rain washing down the street would wash and undercut any boxes that might be in that street." The following is quoted from the testimony of that witness:

*"Cross-Examination.*

"Q. Sergeant, is it any part of your duty as an officer of the city of Norfolk, to report on obstructions in the sidewalks, which may be dangerous to pedestrians?

"A. Yes, sir, that is my duty.

"Q. And how long have those meter boxes been in that street to your knowledge?

"A. Oh, that particular meter box was something new. That was put in by the government some short while ago, I don't exactly remember the date.

"Q. Never mind who it was put in by, you knew it was there, didn't you?

"A. Yes, sir.

"Q. And you stated that for twenty years you have known that the rain washing down that street would wash and undercut any boxes that might be in that street?

"A. Yes, sir.

"Q. Did you ever report this to the city?

"A. I don't know whether I reported this particular box or not, but the general order of the street had been.

"Q. You have reported this street to the city as being a street dangerous to pedestrians?

"A. I have reported obstructions on it as being dangerous, but not very lately because everybody had become so used to it that we just simply stopped reporting it at all.

"Q. In other words, it was understood you would have obstructions in that street?

"A. Well, it was understood you could not keep it in shape very well.   *   *"

The plaintiff, a married woman, with no servant, a husband, three children, the oldest eleven years of age, and herself, to cook, housekeep, etc., for, testified, on the subject of her injuries resulting from the accident, as follows:

"A. Yes; and my left foot stumbled, caught underneath the pipe and down I fell and I fell my whole weight on my knee, and I was in that position so that I couldn't move, and I stayed there about five minutes before I could speak.   Then I managed to get up, with my husband's help, and I went on to church, and I was taken in church with a chill and I had to get up and go home, and when I went home I was for three nights so that I couldn't sleep at all.   I lay flat on my back with pains, and then I sent for the doctor and the doctor came and told me to bandage my knees up, and I band-

aged my knees up, and I have just been a week with the bandage off of my knees.

"Q. How were you injured?

"A. Injured in my knee and in my left side.

"Q. And you state that your doctor advised that you bandage your knee?

"A. Yes, sir.

"Q. One knee or both knees?

"A. Both knees.

"Q. And was one knee more seriously hurt than the other?

"A. Yes, sir; the left.

"Q. Which knee was more seriously hurt?

"A. The left one.

"Q. Were you prevented from walking and carrying on the ordinary course of your business?

"A. Yes, sir; I can't do it now.

"Q. Were you confined in bed at any time?

"A. Six weeks I was confined in bed.

"Q. And after you left your bed did you require the assistance of a cane or crutch?

"A. Yes, sir; I used a broom handle to walk around with.

"Q. And before this injury did you earn any money?

"A. Yes, sir; I made $2.75 a day.

"Q. Doing what?

"A. Washing and sewing.

"Q. Have you made $2.75 a day since?

"A. I haven't made a five cent piece since then for I can't even do my own work.

"Q. Did you have any suffering as the result of the injury to your knee and left side, or your knees and left side?

"A. Yes, sir.

"Q. State as briefly as you can what that suffering was?

"A. Well, just in pain and when I would walk it would seem as if my knee would give right in with me. I couldn't stand up with no strength at all. It seemed there was no strength at all.

"Q. How old are you, Mrs. Boush?

"A. I am 46.

"Q. How much do you weigh?

"A. Now, brother, I couldn't tell you that because I haven't been weighed for so long.

"Q. You weigh about 175 pounds, don't you?

"Mr. Peatross:   She said she doesn't know.

"Mr. Grant:   The jury can guess that.

"By Mr. Grant:

"Q. Do you feel any effects now from the injury?

"A. Yes, sir; I do. I had to stop and go to bed, stop my work and go to bed yesterday. I certainly did."

The physician who attended the plaintiff testified, in substance, that in his opinion her injuries were not permanent; that he saw no reason why she would not recover from them; but he did not testify that she had recovered at the time of the trial, and stated that he could not testify whether there was any nervous shock attendant upon the accident, as he did not know her previous condition and was not an expert in nervous diseases, being merely a general practitioner.

The other evidence in the case was ample to support the verdict of the jury in finding the defendant city guilty of actionable negligence in the premises, and that the plaintiff was not guilty of any contributory negligence; and this is not controverted before us, so that it is unnecessary to refer to such other evidence in detail.

*Barron and Grant,* for the plaintiff in error.

*R. W. Peatross* and *R. B. Spindle, Jr.,* for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court.

The questions presented by the assignments of error and the positions taken in behalf of the defendant city will be disposed of in their order as stated below.

[1] 1. Was there sufficient evidence to support the verdict of the jury in finding that the defendant city had actual or constructive notice of the existence of the obstruction, which caused the accident, in ample time, by the exercise of reasonable care, to have repaired the sidewalk, so as to have made it reasonably safe for pedestrians to use it?

The question must be answered in the affirmative.

The testimony of the sergeant of police, above copied, when considered along with the fact that the meter box in question had been located in the sidewalk for nearly two years before the accident and was, at the time of the accident, in practically the same condition, with respect to projection above the level of the sidewalk, as several other meter boxes on the same block, furnished ample evidence to warrant the jury in reaching the conclusion in question.

[2] 2. Did the fact that the meter box in question was installed by the United States government, more than two years before the accident, interfere with or excuse the defendant city from the performance of its duty to use reasonable care to keep its sidewalks in a reasonably safe condition for pedestrians using the same while themselves exercising reasonable care for their own safety?

The question must be answered in the negative.

It does not appear from the evidence that the United States government had or exercised any authority whatever over the meter box, or the sidewalk on which it

was located, for over two years before the accident.
On the contrary, it does appear from the evidence that
the defendant city, certainly for over two years before
and at the time of the accident, had sole control over
and was charged with the sole duty of keeping such
sidewalk in the reasonably safe condition aforesaid.  So
that there was no major force which interfered in any
respect whatever with the discharge of that duty, and
hence, there was no such force to excuse the defendant
city for the negligent failure to discharge such duty.

*Belvin* v. *City of Richmond*, 85 Va. 574, 8 S. E. 378,
1 L. R. A. 807, is cited and relied on for the defendant
city.  It is apparent, however, from a reading of that
case that it has no application to the case in judgment.
In that case the street was obstructed by a rope put up
by order of the judge of the hustings court.  The city,
by its officer, protested against the obstruction as an
interference with its authority and duty in the premises,
but the judge of the hustings court, regarding the due
administration of justice as of more importance than
the use of the streets a few yards during a portion of
each day, refused to remove the rope.  This court held
that "The city could do no more, unless it had in-
stituted legal proceedings about the matter," and up-
held a verdict for the city, excusing it from liability for
damages for personal injury to the plaintiff caused by
the obstruction of the street.  That was an entirely
different situation from that presented by the facts in
the instant case.

[3] 3. Can we say that the evidence was insufficient
to warrant the jury in assessing the damages of the
plaintiff at $1,000?

The question must be answered in the negative.

No authority is cited for the defendant city to sus-
tain its contention that the damages in question are

excessive. And, under the principles applicable, which are too well settled to make a review of the authorities on the subject profitable in the present case, it is plain that the evidence amply supported the verdict in the finding of damages in question.

For the reasons stated above we are of opinion that the trial court erred in setting aside the verdict of the jury and granting a new trial; and this court under the statute (Code section 6365) will enter final judgment in favor of the plaintiff for the sum of $1,000, the amount of her damages ascertained by the verdict of the jury, with interest and costs.

*Reversed and final judgment.*