**E. A. DAWLEY, Jr., Plaintiff,**

v.

**CITY OF NORFOLK, VIRGINIA, a municipal corporation, Thomas F. Maxwell, City Manager, Calvin H. Dalby, Director of Public Safety, and S. C. Morrissette, Director of Public Works, Defendants.**

**Civ. A. No. 2405.**

United States District Court
E. D. Virginia,
Norfolk Division.

Feb. 26, 1958.

E. A. Dawley, Jr., Norfolk, Va., for plaintiff.

Leonard H. Davis, City Atty., Norfolk, Va., for defendants.

WALTER E. HOFFMAN, District Judge.

In this action by way of declaratory judgment, plaintiff, a Negro attorney at law practicing in the City of Norfolk, Virginia, seeks a mandatory injunction against the defendants to require them to remove the word "Colored" from the doors of certain rest rooms in a courthouse building occupied and used exclusively by four state courts and the judges thereof. Plaintiff concedes that the rest rooms are equal in every respect. The lettering on the doors of the four rest rooms are indicated respectively as follows:

"White Women—Rest Room"

"Colored Women—Rest Room"

"Rest Room (White Men)"

"Rest Room (Colored Men)"

For many years the lettering on these doors has remained the same. The toilet facilities have been, and are now, being used by persons having business in the various courts, such as jurors, attorneys, witnesses, parties litigant, and judges. One of the three water closets in facilities marked "Rest Room (White Men)" is for the exclusive use of the judges of the Circuit Court and the Court of Law and Chancery. The rest rooms are otherwise open during all daylight hours— no keys are required to gain admittance —and no guards are maintained to keep any individual from entering any particular rest room.

Plaintiff contends that the presence and maintenance of the aforesaid signs by defendants is in violation of, and repugnant to, the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C.A. § 1981, and is therefore unconstitutional and unlawful.

Both plaintiff and defendants have filed motions for summary judgment and, in addition, defendants have filed a motion to dismiss. The questions thus presented may be stated:

(1) Does this Court have jurisdiction over the subject matter of this action?

(2) If jurisdiction exists, should the Court exercise the same in an action of this type?

(3) May this action be maintained as a class action?

(4) Does the complaint state a claim against the defendants, or any of them, upon which relief can be granted?

(5) Should the Court take judicial notice of facts and certain conclusions alleged by plaintiff in his motion for summary judgment?

The theory upon which plaintiff proceeds is, to say the least, ingenious. Upon argument he practically conceded that the judges of the four state courts had control over the signs in question. In fact, he insists that the public has this impression and he argues that it is the general public from whom attorneys are able to secure their means of livelihood. For this reason, plaintiff contends, the presence of these signs conveys the thought that the judges consider Negro attorneys inferior which, in turn, adversely affects the prestige of Negro attorneys in the eyes of the public and thereby diminishes their earning capacity. Plaintiff rests his case upon the statement of the United States Supreme Court in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 691, 98 L.Ed. 873, wherein it is stated that segregation generates a feeling of inferiority as to their status in the community[1]. But

---

1. Plaintiff has misinterpreted the language of the Supreme Court in taking a statement out of context. Preliminary to making the statement referred to, the Court pointed out that in McLaurin v. Oklahoma State Regents, 339 U.S. 637, 70 S.Ct. 851, 94 L.Ed. 1149, in requiring that a Negro admitted to a white graduate school be treated like all other students, resort should be had to intangible considerations: " * * * his ability to study, to engage in discus-

it is clear from an examination of Brown, supra, that the Court did not intend to suggest that all segregation, whether voluntary or otherwise, imports inferiority to the Negro race. According to plaintiff, he does not complain of segregated toilets, but states that the issue is confined to the maintenance of discriminatory signs in an American court, and whether such action is lawful.

With this highly sociological approach the Court is in disagreement. Irrespective of the wisdom of maintaining separate white and colored toilet facilities in a state courthouse, there is no more reason to suggest that judges deem Negro attorneys inferior than there is to say that a white attorney is inferior because he may use a rest room marked "White". In federal buildings throughout Virginia, where separate facilities for colored and white have generally been abolished, it in no sense increases or decreases the prestige of any attorney in the mind of the judge or the public. To say that there is a loss of earning power, or a denial of equal protection of laws, or a denial under color of law of equality of treatment, would reduce the law to an absurdity.

■ The jurisdiction apparently rests in this Court to entertain this type of action under the Civil Rights Act, 28 U.S.C.A. § 1343(3) [2]. Plaintiff likewise contends that jurisdiction is invoked under 28 U.S.C.A. § 1331, in that the matter in controversy arises under the Constitution, laws or treaties of the United States, and the amount in controversy exceeds $3,000, exclusive of interest and costs. With this last statement, the Court is not in accord as it appears to a legal certainty that plaintiff's claim involves nothing in money value. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288–290, 58 S.Ct. 586, 82 L.Ed. 845. If the jurisdictional amount were necessary to confer jurisdiction, the action would clearly be in bad faith. However, the jurisdictional amount is of no importance in cases arising under the Civil Rights Act.

■ Plaintiff, for reasons not revealed of record, has instituted no action in the state courts seeking similar relief. If it were necessary to so decide, the Court would be inclined to exercise its discretion in declining to entertain the claim under the doctrine of Com. of Pennsylvania v. Williams, 294 U.S. 176, 182, 55 S.Ct. 380, 79 L.Ed. 841. The matter involved, as presented by the pleadings herein, is exclusively one cognizable by the state courts. While federal courts have been frequently called upon to pass upon questions involving state laws and practices which clearly impinge upon the rights of individuals as violative of constitutional rights, the exercise of such jurisdiction must be with caution, and there is probably no clearer illustration of such approach than in the case at bar wherein the plaintiff is, in effect, requesting the federal court to instruct his brethren on the state court as to how they should "keep their own

sions and exchange views with other students, and, in general, to learn his profession". Then follows: "Such considerations apply with added force to children in grade and high schools. To separate them from others of similar age and qualifications solely because of their race generates a feeling of inferiority as to their status in the community that may affect their hearts and minds in a way unlikely ever to be undone". The Court then proceeds to quote from the Kansas case relating to segregation in public schools wherein it is said that the policy of separating the races is *usually* interpreted as denoting the inferiority of the Negro group. It should

be noted that the Supreme Court at no time has said that *all* segregation denotes inferiority of the Negro.

2. Title 28 U.S.C.A. § 1343, reads as follows:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

\* \* \* \* \*

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

house in order". However, aside from this point, the plaintiff's case must fail for a variety of reasons.

■■ There exists no state statute in Virginia requiring the maintenance of separate rest room facilities for colored and white[3]. In the Building Code of the City of Norfolk there is a provision[4] to the effect that separate rest rooms shall be provided, but there is no criminal penalty which may be imposed upon a white person who may use a rest room marked "Colored", or vice versa. It is merely a requirement on the builder and in no sense places any obligation on those who may elect to use the toilet facilities. No other ordinance of the City of Norfolk directs any person to use any specific rest room. It is true, of course, that the signs constitute an invitation to use by the separate races but, unlike the laws relating to segregation in public schools which have been declared unconstitutional, there is no existing statute or ordinance which declares the use of rest room facilities by members of races to be limited to what appears as lettering on the door thereof. It may be argued that a use contrary to the invitation appearing on the door could be prosecuted as "disorderly conduct" by reason of the broad interpretation placed upon that term in Virginia. Collins v. City of Norfolk, 186 Va. 1, 41 S.E.2d 448. Assuming arguendo that such an act would constitute "disorderly conduct" and thereby subject a person to criminal prosecution, it is settled law that a court of equity will not lend its hand to restrain a criminal prosecution based upon a state law or city ordinance, even if the constitutionality of the same be involved, since this question can be raised and determined in the criminal case, with review by the higher courts, as well as in a suit for injunction. Douglas v. Jeannette, 319 U.S. 157, 163–164, 63 S.Ct. 877, 87 L.Ed. 1324. This is especially true where the only threatened action is a single prosecution of an alleged violation. It is only where there is a clear showing of danger of immediate irreparable injury that equity will interfere. Spielman Motor Co. v. Dodge, 295 U.S. 89, 95, 55 S.Ct. 678, 79 L.Ed. 1322; Beal v. Missouri Pacific R. Corp., 312 U.S. 45, 49, 61 S.Ct. 418, 85 L.Ed. 577; Sterling v. Constantin, 287 U.S. 378, 53 S.Ct. 190, 77 L.Ed. 375; National Ass'n for Advancement of Colored People v. Patty, D.C., 159 F.Supp. 503. Such is not the case here. There have been no threats or orders to plaintiff with respect to using the rest rooms in the state courthouse building. Surely this Court cannot anticipate what the consequences or outcome of such action would be.

■ Under the laws of the State of Virginia, it is abundantly clear that the judges maintaining their courts therein have the control over the building. Section 15–686 of the Code of Virginia 1950, places an obligation upon the board of supervisors of every county and the

3. Plaintiff suggests that § 18–327 and § 18–328 of the Code of Virginia, 1950, are applicable. These controversial statutes relate to the duty to separate the seats of the races and the duty to take seats assigned at any public hall, theatre, opera house, motion picture show, or any place of public entertainment or public assemblage. The constitutionality of these statutes is not before the Court. In a recent state court proceeding involving the attempted enforcement of the criminal provisions of said statutes, the state court held the statutes to be unconstitutional. These meeting places or public assemblages strike at the very theory upon which the Supreme Court ruled in the school segregation cases, the transportation cases, the park cases, etc.

The reasoning is that members of the Negro race should not be precluded from associating with members of other races when it tends to deprive them of the opportunity of enjoying facilities which should be common to all, and from which the Negro will benefit equally with others. To assign this logic to the use of toilet facilities admittedly equal is, in the opinion of this Court, a bit far-fetched.

4. Section 2002.1 of the Building Code of the City of Norfolk, effective April 15, 1948, states:
" * * * Where negroes and whites are accommodated there shall be separate toilet facilities provided for the former, marked plainly 'For Negroes Only'."

council for every city to provide a courthouse, clerk's office and jail. The fee simple title remains with the county or city, as the case may be, and the governing bodies are chargeable with the cost of acquisition and the duty of keeping the same in good order. If the governing body fails to maintain the courthouse in a proper state of repair, *or if it is otherwise insufficient,* the state court may issue a rule to show cause why a peremptory mandamus should not issue commanding them to cause the courthouse to be made secure, or put in good repair, or *rendered otherwise sufficient.* Code of Virginia, § 15–693.1. This last section adequately illustrates the propriety of declining jurisdiction in the instant case, for, if this Court proceeded to grant the relief and ordered the defendants to remove the signs in question, the judges of the state court could forthwith proceed to grant mandamus and cause the signs to be again placed upon the doors of the rest rooms.

Other provisions of the law point to the control granted to judges of the state courts with respect to the courthouse. Under § 15–690 and § 15–691, rooms in courthouses may be rented with the approval of the judges, and entire buildings may similarly be leased with the approval of the judges, but the lease may be terminated when, in the opinion of the judges, the building is needed for a courthouse, clerk's office or jail.

█ When we examine the duties of the City Manager, Director of Public Safety, and Director of Public Works, we find nothing which imposes upon these officials any discretion with respect to the control of the state courthouse. The City Manager is the administrative head of the municipal government; the Director of Public Works apparently has nothing to do with public buildings; the Director of Public Safety is the chief *administrative* authority in all matters pertaining to the erection, maintenance, repair, occupancy and inspection of buildings under such regulations as may be ordained by the council. But the authority given to these officers is clearly subject to the state law granting to the judges the control over the state courthouses. Supervisors of Bedford County v. Wingfield, 27 Grat. 329, 68 Va. 329; Belvin v. City of Richmond, 85 Va. 574, 8 S.E. 378, 1 L.R.A. 807.

The action herein must be dismissed for the reason that the defendants do not have control over the courthouse. Together with the Judge of the Corporation Court of the City of Norfolk, who apparently is the individual in ultimate legal control of the courthouse, the present defendants, excepting the Director of Public Works, could undoubtedly be classified as proper parties, but against these defendants alone no relief can be granted.

█ There is likewise serious doubt whether this action can be maintained as a "class action" under Rule 23(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. The suit is instituted in the name of the plaintiff "who sues for himself and on behalf of others similarly situated, viz., Negro attorneys at law practicing in Norfolk, Virginia". The record discloses that there are fifteen Negro attorneys licensed to practice law in Norfolk, at least two of whom are women. There is no suggestion that plaintiff endeavored to bring in other Negro attorneys as parties plaintiff or defendant. Manifestly plaintiff does not represent a class so numerous as to make it impracticable to bring them all before the court as provided by Rule 23(a). As a class action the case falls, but this would not prevent the granting of relief to the plaintiff if he is otherwise entitled to the same.

It becomes unnecessary to consider plaintiff's insistence that the Court take judicial notice of a five-page document entitled "Motion for Judicial Notice". While such a motion is foreign to any known procedure in law, it is sufficient to state that most of the material contained therein is not the proper subject of judicial notice. In fact, the Court disagrees with many of the statements made in said document.

In the able and exhaustive brief on the subject filed by the City Attorney of the City of Norfolk, it is suggested that the "separate but equal" doctrine may still exist with respect to public rest rooms. It is certainly true that if anything remains of this doctrine, it could be upheld in a case such as presented herein. The underlying reasons for the rejection of the "separate but equal" doctrine would not appear to be applicable to toilet facilities, although since the decision in the celebrated case of Brown v. Board of Education, supra, the doctrine has been considered as abolished in public schools, public parks, public golf courses, public swimming pools, municipally operated restaurants, public transportation facilities, and other public functions. There is, at least, a suggestion by the district court in Plummer v. Casey, D.C.1955, 148 F.Supp. 326, affirmed sub nom Derrington v. Plummer, 5 Cir., 240 F.2d 922, certiorari denied sub nom Casey v. Plummer, 353 U.S. 924, 77 S.Ct. 680, 1 L.Ed. 719, to the effect that if separate and equal public cafeterias had been provided for white and colored persons, the result of the case would have been different. It is now universally accepted that property acquired, maintained, and operated by the Federal, State and local governments shall be made equally available to all races, subject to reasonable rules and regulations. Tate v. Department of Conservation and Development, D.C., 133 F.Supp. 53, affirmed 4 Cir., 231 F.2d 615. It may well be that the maintenance of separate but equal toilet facilities for the races falls within the classification of a reasonable rule and regulation, particularly where the courthouse itself is available to all races. Certainly it could not be argued that the water closets reserved for the two judges should be made available to the general public merely because of the principle of law above stated. However, this Court leaves for the judgment of more capable jurists the interesting question raised by the City Attorney.

Counsel for the defendants will prepare an order sustaining defendants' motion for summary judgment. The Court will treat the defendants' motion to dismiss as a motion for summary judgment pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiff's motion for summary judgment will be denied. Costs are assessed against the plaintiff.