George WELLS et al.

v.

Honorable Herbert B. GILLIAM, etc.

Civ. A. No. 3179.

United States District Court
E. D. Virginia,
Richmond Division.

June 1, 1961.

Jordan, Dawley & Holt, Norfolk, Va., Henry H. Jones, Simon L. Cain, Washington, D. C., for plaintiffs.

Walter E. Rogers, Richmond, Va., Willis W. Bohannan, City Atty., Petersburg, Va., for defendants.

LEWIS, District Judge.

The plaintiffs, for themselves and all other members of the Negro race, via a suit for a declaratory judgment, seek a permanent injunction restraining the Judge of the Municipal Court of the City of Petersburg, and all the servants, agents and co-workers from continuing racial segregation in the Municipal Court of the City of Petersburg.

Plaintiffs contend the practice is in violation of the Fourteenth Amendment of the Constitution of the United States and is therefore unconstitutional and unlawful. They also pray this Court to award each of them monetary damages in the amount of $130,000.04, in satisfaction of both compensatory and punitive damages for the alleged willful, deliberate, persistent, infuriating and unlawful conduct of the defendant.

Jurisdiction is invoked under Title 42, Sections 1981, 1983, Title 28, Sections 1331, 1343(3), 2201, 2281, 2284, U.S.C.A.

The case was heard upon stipulations of fact tendered in open court and made a part of the record, upon oral argument and consideration of written briefs submitted by counsel for all parties.

Simplified, the question presented is: Does this Court have jurisdiction under the Constitution of the United States or any section of the United States Code to enjoin and restrain a judge of a duly constituted court, created by the laws of Virginia, in the exercise of his duty to preserve order in his court and to see to it that justice is not obstructed by any person or persons; and if so, should the court exercise the same in an action of this type? We think not.

If jurisdiction exists in this Court, it rests under the Civil Rights Act, 28 U.S.C.A. § 1343(3). It does not rest, as contended by the plaintiffs, under Title 28, Section 1331. The jurisdictional amount in controversy does not exceed $10,000, exclusive of interest and costs. The plaintiffs offer no evidence in support of their claim for monetary damages; in fact, their counsel stated judgment in the amount of one cent would be sufficient. Clearly, this phase of the litigation was instituted in bad faith.[1] Were it not for the fact the jurisdictional amount is of no importance in cases arising under the Civil Rights Act, this suit would be dismissed without further comment.

The evidence before this Court clearly establishes that the Municipal Court of the City of Petersburg was created and is being operated pursuant to the charter of the City of Petersburg and the laws of the State of Virginia; that the Honorable Herbert B. Gilliam was duly appointed and is now acting as the Judge of said Court by the Judge of the Hustings Court of the City of Petersburg; that in the space in the court room reserved for spectators and those awaiting the call of their business before the court, seating is assigned on the basis of racial designation, the seats on one side of the center aisle being for the use of Negro citizens and the seats on the other side being for the use of white citizens. The same number of seats are available for citizens of each race. There is no separation of the races in the area before the bench or the bar of the Court. Only persons having business before the Court are permitted in that area when the Court is in session. The separation of the races in that portion of the court room reserved for spectators has been a long-established practice, directed and enforced by every judge occupying the bench of said court. The practice and custom has been continued by the defendant, the present presiding judge, for the purpose of preventing frictions between the races and to preserve order and decorum in his court room and to assure the orderly administration of justice to all, regardless of race or color. The plaintiffs, who are Negro

1. St. Paul Mercury Indemnity Co. v. Red Cab Company, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845; Nixon v. Loyal Order of Moose, 4 Cir., 285 F.2d 250.

citizens of the United States and the State of Virginia, have on more than one occasion been ordered and required by the defendant Judge to occupy seats within the spectator section of the court room on a racially segregated basis while in attendance at the Municipal Court of the City of Petersburg. The same order and requirement has been enforced in the case of all other citizens, white and Negro alike.

The plaintiffs do not contend there is any discrimination by reason of color or otherwise in the administration of justice in that court; to the contrary, they admit there is no separation of the races either among the litigants, counsel or witnesses in the area before the bench or the bar of the court.

■■ Upon the record thus made, no rights granted the plaintiffs under the Constitution of the United States have been violated. The Fourteenth Amendment to the Constitution, upon which the plaintiffs rely, does not grant any rights to the citizens of the United States. It provides only that no state shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States; nor shall any state deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

■ Counsel for the plaintiffs frankly concede neither the laws of the State of Virginia nor the Ordinances of the City of Petersburg require the separation of the races in the spectator sections of the courts of Virginia. They assert, however, that many courts of record, including the Supreme Court of Appeals of Virginia, do not require segregated seating in their court rooms. Therefore, under the Equal Protection Clause of the Fourteenth Amendment, this Court should require the Municipal Court of the City of Petersburg to do likewise. If this Court had the power to so do, which it

does not have, this Court would abstain from so doing. The Federal Courts have consistently held that the state courts are separate, distinct, judicial bodies. Abstinence, in state affairs, when not in conflict with the United States Constitution, has long been the federal policy. "This now well-established procedure is aimed at the avoidance of unnecessary interference by the federal courts with proper and validly administered state concerns, a course so essential to the balanced working of our federal system." Harrison v. N. A. A. C. P., 360 U.S. 167, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152. "To minimize the possibility of such interference a 'scrupulous regard for the rightful independence of state governments * * * should at all times actuate the federal courts,' Matthews v. Rodgers, 284 U.S. 521, 525, 52 S.Ct. 217, 219, 76 L.Ed. 447, as their 'contribution * * * in furthering the harmonious relation between state and federal authority * * *' Railroad Comm[ission of Texas] v. Pullman Co., 312 U.S. 496, [61 S.Ct. 643, 85 L.Ed. 971]."

Had not the precise question here presented been passed upon by a court of record in Virginia,[2] this Court would abstain from so doing until the question had been determined by the state courts.

Notwithstanding the Virginia adjudication of this matter, the plaintiffs contend there is no moral or legal justification requiring or condoning segregated seats in the Municipal Court of the City of Petersburg; that it is a mockery of justice and repugnant to the Due Process Clause and Equal Protection Clause of the Constitution of the United States; that it is degrading and shameful to permit such a custom. That these allegations are totally without merit is best evidenced by the fact the plaintiffs offered no evidence in support thereof. What rights, if any, the plaintiffs have as citizens of the United States in self-determining where they may sit in the Municipal court room of the City of Peters-

**2.** Gladys M. Barrette et al. v. Carleton E. Jewett, Judge of the Police Court of the City of Richmond, Virginia (Hustings Court of the City of Richmond, Part II). This case was not appealed to the Supreme Court of Appeals of Virginia.

burg, have not been delineated with any degree of clarity. If they have the right to determine where they sit, they have the right to applaud, the right to take pictures, and many other similar rights; carried to the extreme, proper court room decorum and order would be non-existent. The evidence in this case establishes beyond question that the practice and custom complained of has been directed and enforced by every judge occupying the bench of that court; that the reason therefor is to preserve order and decorum and to assure the orderly administration of justice to all, regardless of race or color. There is no allegation or offer of proof that the order complained of is not being enforced equally among all citizens regardless of race or color. Whether other courts of Virginia deem it necessary or unnecessary to promulgate a similar order is immaterial. Suffice it to say, it has recently been necessary for a Virginia court to clear the court room of all spectators in order to maintain decorum and order.[3]

■ That a judge has control of his court room and the conduct of those attending his court is axiomatic. Indeed, it is a power inherent in any court. In the administration of justice, the judge is charged with the preservation of order in his court and to see to it that justice is not obstructed by any person or persons whatever. Such is inherent in and incident to the exercise of the jurisdiction conferred upon him and is consonant with the power to punish for contempt committed in the presence of the court.[4]

■ It is well established that all courts have the inherent power to prescribe such rules of practice and rules to regulate their proceedings and facilitate the administration of justice as they deem necessary. The power to maintain

order, to protect itself or its officers from being disturbed in the exercise of their functions, and the power to punish individuals who fail to comply with the rules adopted by the court to that end, are probably the most important of all inherent powers of a court, since such powers are essential to the very existence of a court as a judicial tribunal.[5]

■ In addition to this inherent power, it is very clear under the laws of Virginia that judges of courts of record have control of the building in which their courts are maintained. This phase of the question was thoroughly discussed by Judge Hoffman in Dawley v. City of Norfolk, D.C., 159 F.Supp. 642.

Certainly, if judges of the courts of record in Virginia have control of the building in which their courts are maintained, they have control of the court room in which they preside. That the same control is vested in the courts of Virginia not of record is shown by sections of the Virginia Code. Section 16.-1–25 gives such courts authority to make and enforce rules of practice; Section 16.1–26 grants the judges of the courts not of record the same powers as judges of courts of record to punish summarily for contempt.

For the reasons above stated, the Court is of the opinion that no rights of the plaintiffs or the class they represented, as granted or guaranteed to them by the United States Constitution, or any statutes of the United States, have been or are being violated and that this suit is without merit in fact or in law.

Counsel for the defendant will prepare an appropriate order, dismissing the suit, submit the same to counsel for the plaintiff for approval as to form, and it will be entered accordingly.

Costs are assessed upon the plaintiffs.

3. Lynchburg.

4. See 14 Am.Jur., Courts, Sections 42 and 43, and cited authorities.

5. 14 Am.Jur., Courts, Sections 150, 151, 153 and 171, and cited authorities.