*By the Court.*—Judgment affirmed.

In re Court Room and Offices of the Fifth Branch of the Circuit Court, Milwaukee County, Wisconsin.

*December 8, 1911—January 30, 1912.*

*Circuit courts: Court rooms, etc.: Duty of county board to provide: Discretion: Unsuitable quarters: Power of court to protect itself: Practice: Ex parte proceedings: Injunctional order: Appealable order.*

1. In a county like Milwaukee county, quarters which the county board proposes to furnish for the circuit court are neither suitable nor convenient unless they include a jury room.
2. Independent of the statutory duty of the county board to provide suitable and convenient quarters for the circuit court, there is a duty to do so under the constitution, and the discretion of the county board in respect to the selection of court rooms is not wholly beyond the control of the courts.

3. A constitutional court of general jurisdiction, like the circuit court, has inherent power to protect itself against any action that would unreasonably curtail its powers or materially impair its efficiency.

4. In order to preserve the full and free exercise of its judicial functions a circuit court may, in an appropriate case, make an *ex parte* order without formally instituting an action to secure the desired relief.

5. Thus, where a county board threatens to remove a circuit court to unsuitable and inadequate quarters, the court may, in an *ex parte* proceeding, issue an injunctional order restraining such action by the board.

6. The better practice in such a case would be to institute the proceeding by an order to show cause, together with a temporary restraining order. SIEBECKER, KERWIN, and TIMLIN, JJ., dissent.

7. It is within the power of the court, however, to issue an injunctional order absolute in form in the first instance; but in such a case the county board has the right to be heard as to the law and the facts upon a motion to vacate or modify such order.

8. Upon refusal of the circuit court to vacate such an order an appeal therefrom may be taken, it being a final order affecting a substantial right, made in a special proceeding.

APPEAL from an order of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge.  *Affirmed.*

On April 27, 1911, his honor, Judge TURNER, judge of the Second judicial circuit, Fifth branch, Milwaukee county, Wisconsin, made the following order:

"Whereas on the 25th day of March, A. D. 1908, the *County of Milwaukee,* by its *Board of Supervisors,* entered into a contract of lease with the trustees of Wisconsin Commandery No. 1, Knights Templar, of the city of Milwaukee, whereby it leased from the said trustees 'all the rooms or apartments and the appurtenances thereunto belonging on the fourth floor of the Masonic Building situated on the southeast corner of Jefferson and Oneida streets in the city of Milwaukee' (across the street from the park on which the court house is situated) for the term of three years from the 1st day of May, 1908, the rent reserved being $2,400 a year, to be paid in equal monthly instalments during the term; it was further therein provided, 'it is mutually agreed and under-

stood that said premises shall, during said term, be used only for the purpose of holding court proceedings and when not so used shall be under the control of the parties of the first part;' that the said *County of Milwaukee* did thereupon take possession of the said fourth floor of said building and arranged the same for court room, jury room, judge's chambers, and reporter's room, together with necessary toilet; that said county, at great expense, furnished the said court room and other rooms mentioned, and duly assigned the same to the Fifth branch of said court for use, and the Fifth branch of said court has since that date and is at the present time using and occupying the same for conducting court proceedings and for the use of said judge of said court, and that they have been at all times and now are suitable and proper for such use; that there is no suitable and convenient room for holding said court and for the accommodation of the court and its officers in the court house in said county; that said lease is about to expire.    That on the 9th day of February, 1911, the judge of said court received a letter from the trustees of said Commandery, which letter is as follows:

" 'Wisconsin Commandery No. 1.

" 'Milwaukee, Wis., Feb. 9, 1911.

" '*Hon. W. J. Turner,*

" 'Masonic Bldg., City.

" 'DEAR SIR: As you are doubtless aware, the lease of the *County of Milwaukee* for the court room in the Masonic Building, occupied by you, expires May 1st.    At the same time the leases of most of the other tenants in the building expire, and the trustees are now arranging for renewals of the same.

" 'We should be pleased to know at a very early date whether it is the desire of the county to renew its lease.

" 'We beg to advise you that the trustees are willing to renew the same for five years at the same rental, and on the same terms and conditions as heretofore.

" 'Will you have the kindness to have the matter acted on by the proper parties as early as possible, and oblige,

" 'Yours very truly,

" 'GEO. A. DAVIES,

" 'Q. A. MATTHEWS,

" 'ANDREW D. AGNEW,

" 'Trustees.'

"That thereupon the judge of said court took the opinion in writing of many of the firms and members of the bar of the said county, irrespective of political affiliations, and they united in a request that the court be continued at its present quarters, stating reasons therefor, which request was presented to the *Board of Supervisors* of said county by the said judge, and accompanied a letter dated February 25, 1911, of which the following is a copy:

" '2/25/1911.
*" 'To the Chairman and Board of Supervisors of the County of Milwaukee.*

" 'Gentlemen: The term of the lease of my court room and chambers will expire in May following.

" 'The trustees of Wisconsin Commandery have requested that they be informed at an early date whether the county will retain the rooms. I requested from them a proposition in writing and am inclosing the same to you.

" 'You will note that they will renew the lease for a period of five years on the same terms as the present lease. I have also taken the opinion of many of the members of the bar who are actively engaged in the practice of the law before the circuit court, and inclose their request that the court be continued in its present quarters, with reasons therefor.

" 'I wish to add that in my opinion the present location is the most convenient that can be obtained outside of the court house. The reasons are very apparent to those of you who have had business in my court. The proximity to the court house and the clerk's office makes a great saving in expense in transacting the business of the court. I am constantly drawing from the jurors of the courts in the court house and they draw from me. Thus we save in dispensing with the services of a full panel of thirty-six men.

" 'The judges are about to dispense with all over eighty jurors for four courts. This will be done by drawing that number of jurors for all the courts, using jurors and keeping them together in one court room, and my court room is conveniently located and well adapted for that purpose. We will thus effect a saving to the county of at least $120 per day of actual jury service.

" 'The risk of taking files from the court house is great, and being near makes that risk less. Almost daily we have to

use some of the records from the other officers, such as county judge, register of deeds, etc., and again there is a risk and trouble to take them from the court house. Of course, the nearer my court is to the court house, so much is the risk less. The expense and convenience to parties, witnesses, and litigants need not be dwelt upon. It is apparent. My present court room is fully furnished and equipped. All this was done at considerable expense, and in all probability it would not fit another room and it would have to be remodeled, which again means expense. The location is as good as can be found. It is light and well ventilated and removed from the noise as much as possible in a city.

" 'It has been suggested that my court room could be conveniently established in the Pereles Building, in the west room on the fifth floor. I have examined the quarters and they are not suitable or convenient. My furniture would not fit in and leave proper space. The room is too narrow, and with the partition out would leave no room suitable for my private offices. There is no room for the reporter and jury. The noise, when windows are open, would seriously interfere with the transaction of business.

" 'Other reasons might be given why the place is not suited for the holding of a circuit court, but it is unnecessary to state them, as a casual examination will satisfy any one to that effect.

" 'I respectfully suggest to your honorable body that the matter of leasing the present quarters for my court be taken up by you and arrangements to that end consummated upon suitable terms.

" 'Very respectfully yours,
" 'W. J. TURNER, Judge.'

"That all the facts stated in said letter are true within the knowledge of the judge of said court.

"That on the 5th day of April, 1911, the judge of said court received the following letter from the Committee on Public Buildings of said county:

" 'Milwaukee, April 5, 1911.
" '*Hon. W. J. Turner, Judge Circuit Branch 5, City.*

" 'DEAR SIR: The undersigned Committee on Public Buildings and Grounds of the *County Board* have determined that space in the Pereles Building be used and occupied for the

Circuit Court Branch 5, commencing May 1, 1911. The lease for the present quarter of said court will not be renewed.

" 'The committee will be pleased to meet you and receive your suggestions as to decorations and arrangements.

" 'Respectfully,

" 'ALBERT E. GUMZ,

" 'EMIL RUHNKE,

" 'Committee.'

"That just prior to the receipt of said letter it came to the knowledge of the judge of said court that the *Board of Supervisors* of said county wished to establish said court in a room upon the fifth floor of the Pereles Building in said city, located at the corner of East Water and Oneida streets, four blocks from the court house; that the judge of said court personally inspected said quarters proposed to be appropriated for such purpose and ascertained that they were entirely inadequate, and not suitable or convenient for the purposes of the said court, and the judge and officers thereof, and that the business of said court could not be properly administered therein, and that due administration of justice would be hindered and prevented to a large extent by the establishment of such court at said place. That he caused measurements to be taken of the room designated as a court room; that it was but thirty-eight feet long and twenty-six feet wide, and that the furniture and equipment of said court could not be installed in said room and leave proper, suitable, and convenient space for the transaction of the business of the court; that there were not suitable and convenient offices of the court; that there was no jury room and no room for the reporter of said court; that it was proposed to remove a certain partition which would make the court room fifty-six feet long, but the removal of which would entirely deprive the court of any chambers, and there would be neither chambers, jury room, nor reporter's room for its use; that the room itself would, when the windows were raised, be so noisy that it would be with the greatest difficulty that witnesses, attorneys, and the court could be heard in the transaction of business; that the furniture, which cost a great deal of money and was constructed with the idea of being used in a new court house, would have to be cut down and practically destroyed; that there is not sufficient ventilation and there cannot be any in-

stalled in said apartments; that under the plan which is now being carried out by the judges of said court, jurors are selected from one common panel of about eighty names, and have to assemble in the court room of one of the judges and be by him assigned to the various courts; that the assigning. of jurors as above described will be taken by the various judges of said court in rotation; that there would be no room for the jurors to assemble even in the enlarged court room proposed; all of which matters have been by the court fully explained to the Committee on Public Buildings of said *County Board.*

"That upon receipt of the letter of April 5, 1911, from the said Committee on Public Buildings the judge of said court wrote a letter to the chairman and acting member of said committee, of which the following is a copy:

                    " 'Milwaukee, Wis., April 7, 1911.
" '*Mr. Albert E. Gumz and Mr. Emil Ruhnke,*
        " 'Committee on Public Buildings, County Board, Milwaukee, Wis.

    " 'GENTLEMEN: Am in receipt of yours of the 5th inst., saying that the *County Board* had determined that space in the Pereles Building be used for the room and offices of the court presided over by me.    You have evidently ignored the reasons why I cannot accept the quarters in the Pereles Building, as stated in my letter of February 25th to the chairman of the *Board.*    You have also ignored the statements I made to your committee when present at its meeting.    You have also ignored the request of the bar that my court be retained in its present location.    I call your attention particularly to the paragraph in my letter as follows:

    " 'It has been suggested that my court could be conveniently established in the Pereles Building, in the west room on the fifth floor.    I have examined the quarters and they are not suitable or convenient.    My furniture would not fit in and leave proper space.    The room is too narrow, and with the partition out would leave no room suitable for my private offices.    There is no room for the reporter or jury.    The noise, when the windows are open, would seriously interfere with the transaction of business.'

    " 'The law is very plain that the county is to furnish a suitable and convenient room and offices for the circuit court..

The law is also very plain that the court cannot be forced into an unsuitable or inconvenient place. I do not wish to be obliged to conflict with the *County Board* in this matter, but if, regardless of the convenience of litigants, attorneys, jurors, the court, and its officers, the *Board* is determined to undertake to carry out the plan, I shall, as my duty compels, make the necessary order that the place you propose is not suitable or convenient, and will establish my court at some other place.

" 'I wish to notify you now of my intention so that you will go to no expense upon the rooms with the expectation that I will accept them for the Fifth branch of the circuit court of Milwaukee county. I explained fully to you that the matter of rent saved was but a trifling sum as compared to the expense of transacting business in the location you suggest. You will remember in my previous letter I called your attention to the saving of more than one hundred dollars daily by reason of the new method adopted by the circuit judges for administering jury work. I have verified my statement to you by having actual measurements made of the space required, and find that I was correct in my previous statement that the rooms are positively inadequate for circuit court purposes.

" 'Yours truly,
" 'W. J. TURNER, Judge.'

"That the facts therein stated are true and correct.

"That after the receipt of such letter the said committee met the judge of said court and proposed to furnish suitable quarters in the court house for such court, to which the judge of said court acceded. Upon investigation by said committee it reported that it could not make such quarters in the court house, and on the 25th day of April, 1911, the following letter was received by the judge of said court:

" 'Milwaukee, Wis., April 25, 1911.
" '*Hon. W. J. Turner, City.*

" 'DEAR SIR: After canvassing the whole subject and considering all possible ways by which space for a court room for your branch of the circuit court might be given room in the court house, the Committee on Public Buildings and Grounds of the *County Board of Supervisors* have found it impractical to locate your court in the court house and have this day decided to locate you in the Pereles Building, in the quarters for which the *County Board* already has a lease and which it is holding under expense to the county treasury.

" 'The new court room will be in readiness for you in time for you to remove thereto before the lease of the Masonic Temple quarters expires.    You will please consider this action as final in the premises.

" 'We will ask you to aid us by having the furniture of your court ready for removal without delay.

" 'Very respectfully,

" 'ALBERT E. GUMZ.

" 'EMIL RUHNKE.'

"That the members of said committee signing said letter have been fully informed by the judge of said court of the insufficiency of the said quarters proposed in said Pereles Building, and notwithstanding their full knowledge of said facts seem to persist in their undertaking to compel the establishment of said court at said place.

"And whereas, it is the duty of the court to maintain and carry on the Fifth branch of said court in suitable and convenient rooms, and the said court can be accommodated for the present in its present quarters, at the same rental, namely, $2,400 per year, which is a reasonable rental, that the said county has been paying therefor, and the said court being of the opinion that the place where it is at present located is suitable and convenient for the purpose of conducting a circuit court, and that the said proposed quarters in said Pereles Building are not suitable, proper, or convenient for conducting said court or the administration of justice:

"Now, therefore, it is ordered and determined that the place in the Pereles Building to which the said *County Board* proposes to have the said court removed is not suitable or convenient for the purposes of conducting a circuit court, and that the due administration of justice in said circuit court cannot be carried on in said quarters for the reasons hereinbefore stated, and the said court does now here order and determine that its furniture and fixtures, both in the court room and in the offices of the judge of said court, the jury room, and the reporter's room be not removed to the said Pereles Building, and the said Albert E. Gumz and Emil Ruhnke and the *Board of Supervisors* of said county and all other persons, officers, and corporations are hereby enjoined and restrained from interfering with the court's possession of said court room, judge's room, reporter's room, and jury room, and with the court's conducting its business in said rooms, and are en-

joined and restrained from in any manner interfering with or disturbing the furniture or furnishings, library, bookcases, or other property used in or in connection with the said court room, judge's chambers, reporter's room, and jury room.

"And it is further, ordered that until the further order of the court the Fifth branch of the circuit court be and the same hereby is established on the fourth floor of the Masonic Building, corner of Oneida and Jefferson streets, where the same is now held, and that the said Fifth branch of the circuit court, until the further order of said court, will be held at the present court room in said Masonic Building, Milwaukee, Wisconsin.

"Of this order let the persons above named, the sheriff of *Milwaukee County,* Wisconsin, the clerk of said court, the county clerk, and the county treasurer take due notice.

"Dated Milwaukee, Wisconsin, April 27, 1911.
"By the Court:                       W. J. TURNER,
"Judge of the Second Judicial Circuit, Branch 5, Milwaukee County, Wisconsin."

On June 30th the *County of Milwaukee* and its *Board of Supervisors* appeared specially for the purpose of objecting to the jurisdiction of the court both as to subject matter and parties, and moved that the proceedings had on April 27, 1911, and the order entered thereon, be vacated: first, because at the time of the making and entry of said order there was neither an action nor a special proceeding pending regarding said matter, and the court did not have at the time of the entry of said injunctional order jurisdiction of either the subject matter or of the parties affected thereby; second, because "the matter concerning which said proceedings were had and taken and order entered was as provided by law entirely within the power and under the jurisdiction and control of the *Board of Supervisors of Milwaukee County;*" third, because said order was and is without legal authority and is entirely void. The court denied the motion and refused to vacate or set aside the order of April 27th, and from the order denying such motion the *County of Milwaukee* and its *Board of Supervisors* appeal

*Winfred C. Zabel,* district attorney, and *William I. Tibbs,* assistant district attorney, for the appellants, cited, among other cases, *Board of Comm'rs v. Thompson,* 7 Ind. 265.; *Board of Comm'rs v. Gwin,* 136 Ind. 562, 36 N. E. 237; *Waldo v. Manitowoc Co.* 54 Wis. 71, 11 N. W. 252; *Harley v. Lindemann,* 129 Wis. 514, 109 N. W. 570; *Cleary v. Eddy Co.* 2 N. Dak. 397, 51 N. W. 586.

For the respondent there was a brief by *Guy D. Goff* and *S. J. McMahon,* and oral argument by *Mr. Goff.*

BARNES, J.    This is the first time in the history of this court that a controversy between a circuit judge and a county board over quarters for a court has reached this tribunal, and the few precedents that have been cited would indicate that such regrettable disputes were infrequent elsewhere.

We have a general finding or conclusion by the circuit judge that the quarters which the *County Board* proposed to furnish for his court were neither suitable nor convenient.    We have also a recital of the specific facts upon which the circuit judge based such conclusions.    There can be no doubt that the specific facts found sustain the general conclusion reached.    A single one of them would be all-sufficient to do so.    We refer to the finding that there was no jury room in the new quarters which the *Board* proposed to provide.    A large part of the time of circuit courts is taken up with the trial of jury cases. As soon as one case is submitted another is called, and the business of the court is being dispatched while the jury which has retired is deliberating. 'Such deliberations may consume but a short time or they may last a couple of days.    If no jury room is provided, the court room must be placed at the disposal of the jury and the business of the court must be entirely suspended while each jury is endeavoring to reach a verdict.    We shall indulge in no argument to show that, in a county like *Milwaukee,* circuit court quarters which have no jury room for use while jury cases are being tried are neither

suitable, adequate, nor convenient.   The proposition is self-
evident.

Judge TURNER in his letter to the chairman of the *County
Board*, under date of February 25, 1911, stated that the
quarters which the *Board* proposed to furnish were inadequate
and stated why they were so.   In his letter of April 7th to the
Committee on Public Buildings he did likewise.   Replies
were sent to each of these letters by said committee, but not
a single statement of fact in either of Judge TURNER's letters
was controverted, nor was the slightest reference made to the
conclusions drawn from such facts.   On the motion to dis-
solve the injunction the *County Board* might have taken issue
with the circuit judge on any or all of the recitals of fact made
or conclusions drawn therefrom by that official, but it did not
do so.   By reason of the failure to deny the correctness of the
facts recited, the recitals must stand as the truth and as being
practically admitted for the purposes of this appeal.   The
*County Board* evidently stood and still stands on the propo-
sition that the duty of providing a court room was by law
vested in the *Board* and was one in reference to which the cir-
cuit judge had nothing whatever to say.

The *County Board* was wrong in reaching this conclusion.
Circuit courts are provided for and their jurisdiction is de-
fined by the constitution.   Secs. 2 and 7, art. VII, Const.
This jurisdiction is somewhat amplified by secs. 2420 and
2654, Stats. (1898), as well as by other statutory provisions.
By sec. 2424, Stats. (1898), Judge TURNER was obliged to
hold four terms of court each year, at each of which a jury was
required to be summoned unless otherwise ordered by the
court.   By sec. 656, Stats. (1898), it is provided that "when
the court house shall from any cause become unsafe, incon-
venient *or unfit for holding court,* the county board shall ap-
point some other *convenient* building at the county seat for
that purpose temporarily."   The law creating the court over
which Judge TURNER presides (Laws of 1907, ch. 645, sec. 4)
provided that "The *Board of Supervisors of Milwaukee*

*County* shall provide *court rooms and suitable offices* wherein
said judge may discharge his duties." It was thus made the
statutory duty of the *County Board* to provide suitable and
convenient quarters for the accommodation of the court.
There was a duty to do so under the constitution, independent
of and regardless of any statute, and it is not correct to say
that there is a discretion vested in the *County Board* in refer-
ence to the selection of court rooms which is entirely beyond
the control of the courts. If such were the case, it would be
within the power of county boards to at least greatly curtail
the usefulness of circuit courts by declining to furnish them
quarters in which judicial business could be transacted. The
authorities, in so far as any can be found on the subject, are
to the effect that a constitutional court of general jurisdiction
has inherent power to protect itself against any action that
would unreasonably curtail its powers or materially impair its
efficiency. A county board has no power to even attempt to
impede the functions of such a court, and no such power could
be conferred upon it. Circuit courts have the incidental
power necessary to preserve the full and free exercise of their
judicial functions, and to that end may, in appropriate cases,
make *ex parte* orders without formally instituting an action to
secure the desired relief. The following cases sustain what
has been said, and no cases holding a contrary doctrine have
been called to our attention: *Supervisors v. Wingfield,* 27
Gratt. 329; *New Orleans v. Bell,* 14 La. Ann. 214; *Belvin v.
Richmond,* 85 Va. 574, 8 S. E. 378, 1 L. R. A. 807; *Ex
parte Mayor, etc. of Birmingham,* 134 Ala. 609, 33 South.
13; *Board of Comm'rs v. Stout,* 136 Ind. 53, 35 N. E. 683,
22 L. R. A. 398; *Board of Comm'rs v. Gwin,* 136 Ind. 562,
36 N. E. 237, 22 L. R. A. 402; *Dahnke v. People,* 168 Ill.
102, 48 N. E. 137; *State ex rel. Kitzmeyer v. Davis,* 26 Nev.
373, 68 Pac. 689; *Mayhew v. Comm'rs,* 1 Disn. 186; *In re
Lyman,* 55 Fed. 29; *Comm'rs v. Hall,* 7 Watts, 290; *In re
Janitor,* 35 Wis. 410; *In re Waugh,* 32 Wash. 50, 72 Pac.
710.

It being apparent from the record now before this court that the quarters which the *County Board* proposed to furnish were inadequate and that the circuit judge was within his rights in refusing to occupy them, the only remaining question which it is necessary to consider relates to the proper practice to pursue when such a disagreement arises.    Disputes of this character apparently have been few, and the practice to be followed is not very well settled.    In some of the cases above cited it is likened to a contempt proceeding which the judge has a right to dispose of in a summary manner.    The order here made, although absolute in form, was not so in fact. The appellant had the right to move to set it aside and to have it vacated if erroneous for any reason, and might make any proper showing of fact or law at its command on the hearing of that motion, and was entitled to have the same considered and disposed of in a fair and impartial manner.    So the order in practical effect amounted to nothing more than an order to show cause, coupled with a temporary restraining order operative until a hearing was had.    This being so, all appearance of autocratic action by the circuit judge would have been avoided had an order to show cause, with a temporary restraining order, been issued in the first instance, and we think it would have been the better practice to have instituted the proceeding in that way.    But the difference between the two methods of procedure is one of form rather than of substance, and the circuit judge had jurisdiction to proceed in either way. Judge Turner acted within his right in deciding primarily that the quarters which the *County Board* proposed to furnish were inadequate.    But the law vests in the county board the power to furnish court rooms, and, so long as those furnished are reasonably adequate, courts cannot insist that different quarters be provided, although they may be more commodious or pleasant or even more convenient.    A circuit judge cannot deprive a county board of the right to be heard on the sufficiency of the court rooms which it proposes to place at the

disposal of the circuit court, and we do not understand that Judge Turner claims or asserts any such right. The order appealed from is a final order affecting a substantial right made in a special proceeding, and is therefore appealable.

*By the Court.*—Order affirmed.

The following opinion was filed February 2, 1912:

Siebecker, J. (*concurring*). I concur in the affirmance of the order appealed from, but do not concur in the suggestion made in the opinion that the practice adopted by the circuit court in making the initial order without notice and hearing is not the best practice for exercising the inherent power of the court to prevent interference with its proceedings and the conduct of its administrative affairs.

The suggestion that the initial step should be taken upon notice for a hearing on the question presented would in my judgment deprive a court of power to efficiently protect itself against infractions upon the orderly conduct of its business and of capacity to perform its functions as an agency of the state. If such a notice and adversary hearing is made compulsory, it is obvious that courts could thereby be prevented from using needful summary remedies which the varying exigencies of occasions imperatively demand. When such occasions arise, the courts by exercising their inherent powers must be able to employ a procedure of such a character that they can effectually and expeditiously protect themselves and thus be able to execute their governmental functions. I consider that the right of any interested and aggrieved party to apply to the court for a modification or vacation of any such initial order on a showing that no grounds existed for making it furnishes such a party an appropriate and adequate remedy.

I am authorized to state that Justices Kerwin and Timlin concur in the view herein expressed.