CITY OF SUN PRAIRIE, Plaintiff-Respondent,

v.

William D. DAVIS, Defendant-Appellant-Petitioner.

Supreme Court

*No. 97–1651. Oral argument March 3, 1999.——Decided June 18, 1999.*

(Also reported in 595 N.W.2d 635.)

For the defendant-appellant-petitioner there were briefs by *Stephen E. Mays*, formerly of *Kalal & Associates* and now of *Thomas, Kelly, Habermehl & Wood, S.C.* Madison and oral argument by *Stephen E. Mays*.

For the plaintiff-respondent there was a brief by *Richard K. Nordeng, Peter T. Julka, Matthew P. Dregne* and *Stafford, Rosenbaum, Rieser & Hansen*, Madison and oral argument by *Richard K. Nordeng*.

¶ 1. WILLIAM A. BABLITCH, J. The City of Sun Prairie Municipal Court entered a default judgment against petitioner, William D. Davis (Davis), an Illinois resident, for his failure to comply with a municipal court order requiring Davis to personally appear at trial on a civil forfeiture action. The issue presented is whether the municipal court has inherent authority to enter such an order. Because we hold that a municipal court does not have inherent authority to order an out-of-state defendant to personally appear at a trial on a civil forfeiture action, we reverse the court of appeals' decision and remand the cause to the municipal court for proceedings on the merits.

¶ 2. The facts are not in dispute. In March 1996, Davis was arrested and cited by the City of Sun Prairie Police for Operating a Motor Vehicle While Under the Influence of an Intoxicant (OWI) and for Operating a Motor Vehicle with a Prohibited Alcohol Concentration (PAC), both in violation of city ordinance 10–1–1 which

adopted Wis. Stat. § 346.63(1)(a) and (b) (1993–94).[1] Both citations issued to Davis informed him of a date for an initial appearance. The citations also notified Davis that his appearance was mandatory in the City of Sun Prairie Municipal Court which had jurisdiction over this civil forfeiture action.

¶ 3. On the date scheduled for Davis' initial appearance, March 13, 1996, neither Davis nor his counsel were present. However, because Davis' attorney had sent the court a letter stating that Davis refused to enter pleas on the two charges, the City of Sun Prairie Municipal Court, the Honorable Frank J. Willkom presiding, entered not guilty pleas on behalf of Davis on both charges.

¶ 4. About one month after the initial appearance, the municipal court held a pretrial conference. The City of Sun Prairie (City) was represented by a city attorney and Davis' counsel appeared on behalf of Davis. Davis did not appear personally. Following the pretrial conference, the municipal court issued a Pretrial Conference Order and Notice of Trial which provided that "[t]he defendant must appear at the trial in person." The trial was ultimately scheduled for October 30, 1996.

¶ 5. On October 22, 1996, Davis' counsel sent a letter to the municipal court objecting to the court's order that Davis appear in person. Counsel indicated that he did not intend to present Davis personally at the trial. He also indicated that if the City wanted the defendant present, it could subpoena him.

¶ 6. On October 28, 1996, the municipal court responded to Davis' counsel by issuing an order indicating that Davis would be sanctioned if he failed to

---

[1] All references to the Wisconsin Statutes are to the 1993–94 version unless otherwise noted.

personally attend his trial, scheduled for two days later. The municipal court listed the possible sanctions including entry of judgment against the defendant, contempt, money terms, orders limiting or barring the presentation of testimony or introduction of evidence at trial, any combination of these sanctions, or other sanctions as the court might deem appropriate.

¶ 7. Davis' counsel immediately responded to the municipal court's order with another letter stating that he would not present Davis personally unless the court or the City could point to a statute requiring Davis' personal appearance. Neither the City nor municipal court responded to this letter.

¶ 8. On October 30, 1996, the municipal court called Davis' case. The City was represented by a city attorney, and Davis' counsel appeared on behalf of Davis. Davis did not appear personally. Upon the City's motion, the municipal court entered judgment against Davis as a sanction for what the court found to be an intentional and egregious violation of the court's order.

¶ 9. In its Findings of Fact, Conclusions of Law and Judgment issued on December 27, 1996, the municipal court stated that having the defendant physically present assisted the court in five ways:

    a.    It promotes prompt justice. If a defendant's attorney appears without the defendant, the defendant's attorney is more likely to be unwilling to enter into trial stipulations or meaningful settlement discussions, either because the attorney does not know certain facts known to the defendant or because the attorney cannot obtain the necessary consent from the defendant. If the defendant is present, the defendant's attorney always has the defendant's knowledge of the facts and

the defendant's authority immediately available.

b.    It enhances the search for the truth. During trials, this court often has questions that the court puts directly to the defendant. The court can do that only if the defendant is present.

c.    It enhances the search for the truth in another way. When the defendant is in court, the court is able to observe the defendant's demeanor, an important consideration for the finder of fact.

d.    It allows the appropriate disposition of the case. If a defendant is found guilty, it may be appropriate for the court to admonish the defendant. The court can admonish the defendant only if the defendant is in court.

e.    It discourages abuse of the municipal court. It is the court's experience that sometimes a defendant (i) will not attend the defendant's own municipal court trial, but will appear by an attorney, (ii) will, through the defendant's attorney, cross examine the City's witnesses, apparently for purposes of discovery, (iii) will avoid examination by not appearing in court, and then (iv) will appeal an adverse judgment to the circuit court and request a new trial. Use of the municipal court to engage in discovery in preparation for a subsequent trial in the circuit court is an abuse of the municipal court. This abuse is discouraged if the defendant must attend his or her trial in municipal court.

Respondent's App. at C3-C4. The municipal court determined that Davis' failure to appear made it impossible for the court to proceed in a way that it

745

determined to be fundamental and essential to the fair and efficient operation of the court. The municipal court further concluded that Davis' failure to personally appear was egregious conduct and done in bad faith. Accordingly, the municipal court entered judgment against Davis on both charges.

¶ 10.    Davis appealed this decision to the circuit court, pursuant to Wis. Stat. § 800.14. The Dane County Circuit Court, the Honorable Michael N. Nowakowski presiding, affirmed the municipal court's judgment in its entirety. Davis appealed the circuit court order to the court of appeals.

¶ 11.    In a split decision, the court of appeals affirmed the circuit court order. The court of appeals determined that as part of the municipal court's inherent authority to efficiently manage its cases, the municipal court has authority to order the defendant to appear personally and to sanction him for failing to do so. *City of Sun Prairie v. Davis*, 217 Wis. 2d 268, 277, 282–83, 579 N.W.2d 753 (Ct. App. 1998). The dissent stated that by ordering the physical presence of the defendant, the municipal court shed its cloak of neutrality and gave the appearance of favoring the municipality. *Id.* at 285. The dissent concluded that the municipal court would continue to function in an orderly manner if it could not issue orders requiring the physical presence of a defendant. *Id.* at 286.

¶ 12.    Davis petitioned this court for review which we granted. The issue is whether a municipal court has inherent authority to order an out-of-state defendant to personally appear at trial on a civil forfeiture action. If the municipal court has such inherent authority we must also determine whether it has inherent authority to enter a default judgment against the defendant for

his or her failure to personally appear. The question of judicial authority is a question of law that we review de novo. *In Interest of E.C.*, 130 Wis. 2d 376, 381, 387 N.W.2d 72 (1986) (citing *Ball v. District No. 4, Area Board*, 117 Wis. 2d 529, 537, 345 N.W.2d 389 (1984)).

¶ 13. An order requiring the defendant to personally appear is, in essence, a subpoena. "A subpoena is a command to appear at a certain time and place to give testimony upon a certain matter." *Black's Law Dictionary* at 1426 (6th ed. 1990). The power of a municipal court to authorize the subpoena of a defendant is unquestioned when the defendant is within Wisconsin. *See* Wis. Stat. § 885.04 (reprinted below).[2] However, there is no statutory authority for a municipal court to subpoena, or order the presence of an out-of-state defendant. If such authority exists it must be found within the court's inherent authority.

¶ 14. Inherent powers have been frequently discussed by this court. *See, e.g., Barland v. Eau Claire County*, 216 Wis. 2d 560, 579–83, 575 N.W.2d 691 (1998); *Flynn v. Department of Administration*, 216 Wis. 2d 521, 548–551, 576 N.W.2d 245 (1998); *St. ex rel. Friedrich v. Dane County Cir. Ct.*, 192 Wis. 2d 1, 16, 531 N.W.2d 32 (1995). In addition to the powers expressly granted to the courts in the constitution, courts have "inherent, implied and incidental powers. These terms 'are used to describe those powers which must necessarily be used' to enable the judiciary to accomplish its constitutionally or legislatively mandated functions." *Friedrich*, 192 Wis. 2d at 16 (citing *State v. Holmes*, 106 Wis. 2d 31, 44, 315 N.W.2d 703

----

[2] Wisconsin Stat. § 885.04 provides: "A subpoena to require attendance before a municipal judge may be served anywhere in the state if authorized by the municipal judge, and shall require the attendance of any witness so served."

(1981) (quoting *State v. Cannon*, 199 Wis. 401, 402, 226 N.W. 385 (1929)). Inherent powers are those that " 'have been conceded to courts because they are courts. Such powers have been conceded because without them they could neither maintain their dignity, transact their business, nor accomplish the purposes of their existence.' " *Jacobson v. Avestruz*, 81 Wis. 2d 240, 245, 260 N.W.2d 267 (1977) (quoting *State v. Cannon*, 196 Wis. 534, 536–37, 221 N.W. 603 (1928)). *See also Flynn*, 216 Wis. 2d at 548; *Friedrich*, 192 Wis. 2d at 16–17.

¶ 15.    A court's inherent authority may fall within its exclusive inherent authority or within inherent authority shared with the legislative or executive branches. If a specific function falls within the court's exclusive inherent authority, neither the legislature nor the executive branches may constitutionally exercise authority within that area. *Flynn*, 216 Wis. 2d at 546 (citing *In Matter of Complaint Against Grady*, 118 Wis. 2d 762, 776, 348 N.W.2d 559 (1984)). Although the court may allow another branch to exercise authority in an area of exclusive judiciary inherent authority, it does so merely as a matter of comity and courtesy rather than as an acknowledgment of power. *Flynn*, 216 Wis. 2d at 546 (citing *Friedrich*, 192 Wis. 2d at 15). The judiciary's exclusive inherent authority is immune from legislative abrogation. *State v. Braunsdorf*, 98 Wis. 2d 569, 580, 297 N.W.2d 808 (1980).

¶ 16.    In contrast, if a function falls within constitutional powers of the judiciary and another branch, it is within the judiciary's shared powers. *Flynn*, 216 Wis. 2d at 547. Another branch may exercise power in an area of shared powers but "only if it does not unduly burden or substantially interfere with the judiciary." *Id.* (citing *Friedrich*, 192 Wis. 2d at 15).

¶ 17. There are generally three areas in which courts have exercised inherent authority. *See Flynn*, 216 Wis. 2d at 550–51. One area of inherent authority is the internal operations of the court. Courts exercise inherent authority to guard against "any action that would unreasonably curtail the powers or materially impair the efficacy of the courts or judicial system." *Id.* at 550 (referring to *Holmes*, 106 Wis. 2d at 44; *Barland*, 216 Wis. 2d at 587–88; *In re Court Room*, 148 Wis. 109, 134 N.W. 490 (1912)). For example in *Barland*, this court determined that a circuit court has inherent authority to retain its judicial assistant. *Barland*, 216 Wis. 2d at 587–88. The *Barland* court relied on a much earlier case, *In re Janitor*, in which this court also held that a court has inherent authority to retain its janitor. *Id.* at 591–92 (referring to *In re Janitor*, 35 Wis. 410, 421 (1874)). Another area of internal operations under a court's inherent authority is a court's facilities. In *In re Court Room*, we determined that a circuit court had inherent authority to refuse facilities proposed by the county because such facilities were inadequate for the court to carry on its business. *In re Court Room*, 148 Wis. at 119–20.

¶ 18. Courts also have inherent authority to regulate members of the bench and bar. For example, this court can require disclosure of judges' assets. *In re Hon. Charles E. Kading*, 70 Wis. 2d 508, 518, 235 N.W.2d 409 (1975). The court also has inherent authority to determine whether attorneys' fees are reasonable and to refuse to enforce those that are not. *Herro, McAndrews & Porter v. Gerhardt*, 62 Wis. 2d 179, 183, 214 N.W.2d 401 (1974).

¶ 19. The final area in which the court exercises inherent authority is ensuring that the court functions efficiently and effectively to provide the fair adminis-

tration of justice. *Flynn*, 216 Wis. 2d at 550 (citing *Holmes*, 106 Wis. 2d at 44; *Jacobson*, 81 Wis. 2d at 247). *See also Latham v. Casey & King Corp.*, 23 Wis. 2d 311, 314, 127 N.W.2d 225 (1964). The parties cited several cases in which the courts exercised inherent authority to dispose of causes on their dockets. For example, a municipal court has inherent authority to dispose of constitutional issues raised before it. *Milwaukee v. Wroten*, 160 Wis. 2d 207, 220–21, 223, 466 N.W.2d 861 (1991). Courts also have inherent authority to do the following: appoint counsel for indigent parties, *Joni B. v. State*, 202 Wis. 2d 1, 9, 549 N.W.2d 411 (1996); determine compensation for court-appointed attorneys, *Friedrich*, 192 Wis. 2d at 19; vacate a void judgment because the court had no authority to enter the judgment in the first place, *City of Kenosha v. Jensen*, 184 Wis. 2d 91, 98, 516 N.W.2d 4 (1994); assess the costs to the parties of impaneling a jury, *Jacobson*, 81 Wis. 2d at 247; order dismissal of a complaint if the attorney fails to appear for a pretrial conference and the attorney was warned of the possible sanction of dismissal, *Latham*, 23 Wis. 2d at 315–16, 317; and order parties to exchange names of lay witnesses, *Carlson Heating, Inc. v. Onchuck*, 104 Wis. 2d 175, 180, 311 N.W.2d 673 (Ct. App. 1981). In each of these case, the court determined that the function in question related to the existence of the court and the orderly and efficient exercise of its jurisdiction.

¶ 20.  There are, however, notable situations in which this court determined that courts do not have inherent authority regarding a particular function. Courts do not have inherent authority to expunge juvenile police records which are under the authority of a police chief. *In Interest of E.C.*, 130 Wis. 2d at 387. Courts also do not have inherent authority to dismiss a

criminal case with prejudice prior to attachment of jeopardy on nonconstitutional grounds. *Braunsdorf*, 98 Wis. 2d at 585. In both cases, this court determined that the functions were not related to the existence of the court nor to the orderly and efficient functioning of the court. *In Interest of E.C.*, 130 Wis. 2d at 387; *Braunsdorf*, 98 Wis. 2d at 585. Specifically, the *Braunsdorf* court, after reviewing many cases from other jurisdictions which recognized a court's inherent authority to dismiss a criminal case with prejudice, determined that in most of these cases, the recognition of inherent authority arose from a procedural rule or statute, not present in Wisconsin, which authorized dismissals. *Braunsdorf*, 98 Wis. 2d at 585.

¶ 21.    If a municipal court has inherent authority to order an out-of-state defendant to personally appear, such authority would fall within the third area of inherent authority—ensuring that the court operates efficiently and effectively to provide the fair administration of justice. *See Flynn*, 216 Wis. 2d at 550. In other words, for the City of Sun Prairie to prevail, it must establish that the order here was necessary for the efficient and orderly functioning of the court or to maintain the court's dignity, transact its business or achieve the purpose of its existence. *See Jacobson*, 81 Wis. 2d at 247. *See also Latham*, 23 Wis. 2d at 314; *State v. Cannon*, 196 Wis. at 536–37.

¶ 22.    The reasons articulated by the municipal court for ordering the defendant's presence are in essence the arguments made by the City to support its conclusion that the municipal court's order was related to the existence of the court and to the orderly and efficient exercise of its jurisdiction.

¶ 23.    In its Finding of Facts, Conclusions of Law and Judgment, in which the municipal court entered

judgment in favor of the City, the court gave five reasons for ordering the defendant to personally appear at trial. First, the municipal court stated that the defendant's physical presence would "promote[ ] prompt justice" because he knows the facts and can enter into trial stipulations or meaningful settlement discussions. Second, the defendant's physical presence "enhances the search for the truth" because the court can ask questions directly of the defendant. Third, the defendant's personal appearance also "enhances the search for the truth" in that the court can observe the defendant's demeanor. Fourth, the defendant's physical presence "allows the appropriate disposition of the case" because the court can admonish the defendant if it finds the defendant guilty. Finally, the court demanded the defendant's physical presence because it "discourages abuse of the municipal court." The municipal court asserted that requiring the defendant to personally appear decreases the chance that the municipal court would be used by Davis' counsel for discovery purposes in preparation for a trial in the circuit court. In its brief, the City explained that requiring the defendant to personally appear avoids the situation in which defendant's counsel cross-examines the City's witnesses, evades his or her own examination, and then appeals an adverse judgment to the circuit court as allowed by Wis. Stat. § 800.14.

¶ 24.  While each of the reasons given by the municipal court is a legitimate concern, neither the municipal court nor the City have persuaded us that these reasons are "related to the existence of the court and to the orderly and efficient exercise of its jurisdiction. . . ." *Jacobson*, 81 Wis. 2d at 247.

¶ 25.  As counsel for Davis pointed out, he appeared at the municipal court on behalf of his client, not only prepared with evidence to defend his client, but also with authority to speak on his behalf. In other words, in answer to the municipal court's first reason for ordering defendant's presence, to promote prompt justice, Davis' counsel had authority to enter stipulations or settlement discussions on behalf of his client. He came prepared with knowledge of his client's wishes and limits. The physical presence of the defendant was not needed to promote prompt justice. His presence was not needed for the existence of the court or the orderly and efficient exercise of its jurisdiction.

¶ 26.  Regarding the court's reason that the defendant's presence would enhance the search for the truth, we agree that once a witness is available, a court has authority to question that witness. *Schultz v. State*, 82 Wis. 2d 737, 741, 264 N.W.2d 245 (1978) (quoting *State v. Asfoor*, 75 Wis. 2d 411, 437, 249 N.W.2d 529 (1976)). We do not agree, however, that questioning the defendant is necessary for the orderly and efficient functioning of the court or to maintain its dignity, transact its business or achieve the purpose of its existence. As noted above, Davis' counsel appeared at the municipal court, prepared to present evidence and to defend his client. The case could have been resolved without the municipal court directly questioning the defendant. Posing questions directly to the defendant was not necessary to the orderly and efficient functioning of the court.

¶ 27.  Regarding the municipal court's third and fourth reasons for ordering the presence of the defen-

dant, we agree that a court observes a defendant's demeanor while he or she is in the courtroom, and that a court may admonish a defendant who is found guilty. However, neither the municipal court in its Findings of Fact, Conclusions of Law and Judgment, nor the City in its brief and argument before this court, provided any reason why observing demeanor or admonishing a defendant found to be guilty is related to the existence of the court or to the orderly and efficient exercise of its jurisdiction. There is simply no case law, statutory authority, or basis in the constitution to show that without observing a defendant's demeanor or admonishing a defendant found guilty, a court will cease to exist or it will not be able to exercise its jurisdiction in an orderly and efficient manner.

¶ 28. The fifth and final reason the municipal court and the City offer for requiring the defendant's presence is to discourage abuse of municipal courts. We understand that municipal courts are concerned that proceedings before them could be misused as discovery proceedings. To appeal an adverse decision by a municipal court, the legislature provided that a party who loses has the right to a de novo review before a circuit court. Wis. Stat. § 800.14. However, only the appellant can request a jury trial. § 800.14(4). The City alleges that because of the statutory structure regarding appeals to the circuit court, defendants have incentive to have a hearing in municipal court for discovery purposes but then to lose the trial so they can appeal to the circuit court and request a jury trial, armed with the discovery made during the municipal trial. The City alleges that that was Davis' counsel's intent by refusing to present Davis in person at the municipal court trial. The City argues that ordering the defendant's

physical presence would alleviate such abuse of the municipal court.

¶ 29.    We recognize that the City raises valid concerns. However, municipal courts, although authorized by the constitution, are creatures of the legislature.[3] And the legislature has made certain public policy choices and established the process to appeal a municipal court decision. It makes no difference whether we agree or disagree with the policy choice made by the legislature. "It is for the legislature to make policy choices, ours to judge them based not on our preference but on legal principles and constitutional authority." *Flynn*, 216 Wis. 2d at 529.

¶ 30.    As allowed by the Wisconsin Constitution, the legislature created authority for municipalities to adopt an ordinance or bylaw providing for the election of municipal court judges and the operation of municipal courts. Wis. Stat. § 755.01(1). A municipal court so created "has exclusive jurisdiction over an action in which a municipality seeks to impose forfeitures for violations of municipal ordinances of the municipality. . . ." § 755.045(1). Along with this exclusive jurisdiction over civil forfeiture actions for municipal ordinance violations, the legislature authorized municipal courts to issue civil warrants to enforce issues

---

[3] Wisconsin Const. Art. VII, § 2 provides that "[t]he judicial power of this state shall be vested in a unified court system consisting of one supreme court, a court of appeals, a circuit court, such trial courts. . .and a municipal court if authorized by the legislature under section 14."

Wisconsin Const. Art. VII, § 14 enables the legislature to authorize each city, village and town to establish a municipal court. "All municipal courts shall have uniform jurisdiction limited to actions and proceedings arising under ordinances of the municipality in which established." Wis. Const. Art. VII, § 14.

under the jurisdiction of the municipal court, § 755.045(2), and to order payment of restitution for violations of certain ordinances, § 755.045(3).

¶ 31.  Because municipal courts exist only as created by the legislature, they are creatures of the legislature. Although a court, including a municipal court, has the power to exercise all of its constitutional powers once it invokes its jurisdiction, it must exercise those constitutional powers within the framework of that conferred jurisdiction. *Wroten*, 160 Wis. 2d at 222. In the case of municipal courts, the "framework of that conferred jurisdiction" has been limited by the legislature. Municipal courts, as creatures of the legislature, are bound by certain policy choices imposed by the legislature as long as such policy choices are constitutional.

¶ 32.  The legislature made the policy choice to establish the appeal process in the manner provided in Wis. Stat. § 800.14. Barring some constitutional infirmity which neither the City argued nor that we can discern, the legislature's policy choice must stand. As stated above, the court's role is not to judge a statutory scheme based on our preferences but rather, based on constitutional principles. We are not persuaded by either the municipal court's reasoning nor the City's argument that the legislative policy choice expressed in § 800.14 for an appeal of a municipal court decision to the circuit court is reason to invoke judicial inherent authority to order the physical presence of an out-of-state defendant.

¶ 33.  The City also argues that the municipal court must have inherent authority to order a defendant to personally appear at trial because subpoenas are ineffective in this case because Davis is an Illinois

resident. The City asserts that the city attorney does not have authority to issue subpoenas in municipal court, and the municipal court has authority to issue subpoenas only in Wisconsin. *See* Wis. Stat. § 885.04.

¶ 34.   In addition to the powers conferred upon municipal courts in Wis. Stat. ch. 755, the legislature granted municipal judges statutory power to authorize the subpoena of a person within Wisconsin. "A subpoena to require attendance before a municipal judge may be served anywhere in the state if authorized by the municipal judge, and shall require the attendance of any witness so served." Wis. Stat. § 885.04. The municipal judge does not, however, have statutory authority to authorize the subpoena of an out-of-state witness.

¶ 35.   As noted above, municipal courts are creatures of the legislature and are bound by the policy choices made by the legislature as long as they are constitutional. Our review of the statutory scheme regarding municipal courts is that the legislature made a policy choice to allow municipal courts to authorize the subpoena of persons within Wisconsin, but by silence, has not allowed municipal courts to authorize the subpoena of persons outside of Wisconsin. *See* Wis. Stat. § 885.04. Because neither the municipal court in its written judgment, nor the City in its brief and argument to this court, have convinced us that ordering the defendant's presence in the court is necessary to the orderly and efficient exercise of its jurisdiction, we uphold the legislative policy choice expressed in § 885.04. The legislature has effectively expressed its policy choice that municipal courts, authorized by the constitution but creatures of the legislature, may authorize the subpoena of a person within the State of Wisconsin but not without the state.

¶ 36. The City supports its argument that the municipal court has inherent authority to order the defendant to personally appear by analogizing this case to cases in which this court has recognized an inherent power. For example, the City cited *Joni B.* for its statement that the court has inherent authority to appoint counsel "in furtherance of [a] court's need for the orderly and fair presentation of a case." *Joni B.*, 202 Wis. 2d at 11. The litigants in *Joni B.* challenged the constitutionality of 1995 Wis. Act 27, § 2442v, which amended Wis. Stat. § 48.23(3) to prohibit a court from appointing counsel in a Children in Need of Protective Services (CHIPS) action for anyone other than the child. *Id.* at 5. This court relied on the inherent authority of the judiciary to conclude that the statute was unconstitutional. *Id.* at 11. "When a parent obviously needs assistance of counsel to ensure the integrity of the CHIPS proceeding, the court cannot be legislatively denied the right to appoint counsel, thereby placing the individual judge in the untenable position of having to essentially serve as counsel for that parent." *Id.*

¶ 37. In *Joni B.*, the amended statute forbid the court from appointing counsel for anyone other than the child. Under the statute, an indigent parent would be forced to represent him- or herself. He or she would have no choice and the court would likely not be afforded the orderly and fair presentation of the case. *See id.* In contrast, in the present case, defense counsel appeared on behalf of his client, prepared to present evidence and defend him. Unlike the situation in *Joni B.*, the municipal court in this case did not need the physical presence of the defendant to achieve the orderly and fair presentation of the case.

¶ 38. Another example offered by the City is *Latham* in which this court held that a county court

has inherent authority to dismiss an action on its merits as a sanction for an attorney's failure to obey a court order to attend a pre-trial conference. *Latham*, 23 Wis. 2d at 316. The court nonetheless reversed the county court's dismissal of the case because neither the attorney nor his client had notice that dismissal was a potential sanction for failing to comply with the order requiring attendance at the pre-trial conference. *Id.* In the present case, Davis and his counsel knew that default judgment was a possible sanction for failing to comply with the municipal court's order.

¶ 39.   We find that *Latham* is inapplicable. The county court in *Latham* had issued an order pursuant to a county court rule that required attorneys to attend pre-trial conferences. *Id.* at 313 n.1. The authority of the court to issue such an order was not in question. The court derived its authority from the county court rule. The only issue before the court was the power of a court to dismiss an action on its merits as a sanction for failure of an attorney to comply with a valid court order, an issue we would reach in this case only if we found the municipal court has the inherent authority to issue the order. *Id.* at 314.

¶ 40.   Aside from attempts to analogize this case, the City has cited to no case in this state nor any other jurisdiction in which a court has recognized the judiciary's power to order a defendant to personally appear based solely on inherent authority, and we have found none. *Cf. Braunsdorf*, 98 Wis. 2d at 580–84 (although this court was not persuaded, the appellant cited cases in several other jurisdictions in which the courts recognized inherent authority to dismiss a criminal case with prejudice).

¶ 41.   In fact, this court has previously stated that a defendant who failed to personally appear in a civil

759

action nonetheless appeared " 'since he was entitled to and did appear by his attorney.' " *Sherman v. Heiser*, 85 Wis. 2d 246, 255, 270 N.W.2d 397 (1978) (citations omitted). The defendant in *Sherman* appeared by the fact that his counsel appeared on his behalf. *Id.* at 254. "The most generous interpretation that could be given to Sherman's action [failure to personally appear] is that he was willing to let his attorney try the case without him. This he had a right to do." *Id.* at 256.

¶ 42.  For all of these reasons stated above, we determine that the existence of the municipal court and the orderly and efficient exercise of its jurisdiction is not dependent upon the personal presence of the defendant. Accordingly, we hold that a municipal court does not have inherent authority to order an out-of-state defendant to personally appear at trial in a civil forfeiture action.

¶ 43.  Finally, Davis argues that because the municipal court erroneously entered default judgment against him, and the City failed to prove its case when his counsel was prepared to proceed, he is entitled to judgment. We disagree. As we have done several times upon concluding that a default judgment was entered in error, we determine that the default judgment entered by the municipal court and affirmed by the circuit court and court of appeals is vacated and the cause is remanded to the municipal court for proceedings on the merits. *See, e.g., Oostburg Bank v. United Savings*, 130 Wis. 2d 4, 10, 17, 386 N.W.2d 53 (1986) (affirming a court of appeals' decision which reversed the circuit court's judgment and vacated the default judgment); *Reynolds v. Taylor*, 60 Wis. 2d 178, 179, 208

N.W.2d 305 (1973) (reversing default judgment and remanding cause).

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the municipal court.